IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

K.C.,[1]

        Plaintiff,

v.                                        Case No. 19-2165-JWB

ANDREW M. SAUL,
*Commissioner of Social Security,*

        Defendant.

## MEMORANDUM AND ORDER

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits. The matter is fully briefed by the parties and the court is prepared to rule. (Docs. 11, 14, 15.) The Commissioner's decision is AFFIRMED for the reasons set forth herein.

## I. Standard of Review

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Plaintiff's initials are used to protect privacy interests.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 750-51. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is

capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id*.; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

## II. Background and Procedural History

Plaintiff applied for disability insurance benefits, alleging a disability beginning December 17, 2015, when she was 57 years of age. (Tr. at 29, 190.) Prior to that time, Plaintiff held jobs as an administrative assistant and office manager. (Tr. at 229.) Plaintiff's claims were administratively denied both initially and upon reconsideration, prompting her to request a hearing before an Administrative Law Judge (ALJ). Plaintiff appeared and testified at a hearing in Kansas City, Missouri, on January 30, 2018. (Tr. at 29.) ALJ Michael Burrichter presided over the hearing from Topeka, Kansas. On May 8, 2018, the ALJ issued a written decision unfavorable to Plaintiff. (Tr. at 29-44.)

At step one, the ALJ found Plaintiff had not been engaged in substantial gainful activity since the alleged onset date. (Tr. at 31.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: degenerative disc disease of lumbar, thoracic, and cervical spine with disc bulge and scoliosis; left lung cancer status-post lower lobe resection; post-thoracotomy pain syndrome; and obesity. (Tr. at 31.) The ALJ reviewed Plaintiff's allegation of limited range of motion of her dominant left arm but determined that it was not a medically determinable impairment. The ALJ noted that he considered all of the impairments and records when assessing

the RFC.  (Tr. at 33-34.)  At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or exceeded any impairment listed in the regulations.  (Tr. at 34-35.)

The ALJ next determined that Plaintiff has the RFC to perform sedentary work, as defined in the regulations, in that she can lift and carry up to 10 pounds occasionally and lift or carry less than 10 pounds frequently; can stand and/or walk for 2 hours in an 8-hour workday; and can sit for 6 hours in an 8-hour workday.  (Tr. at 35.)   Plaintiff should be allowed to sit, stand or walk alternatively; is off task less than 10% of the time; can never climb ladders, ropes and scaffolds, kneel, crouch and crawl; can occasionally climb ramps and stairs, stoop and balance; can frequently reach overhead and in all other directions with the left upper extremity.  (Tr. at 35.)

In determining Plaintiff's RFC, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but Plaintiff's statements as to the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical and other evidence.  (Tr. at 36.)  The ALJ reviewed medical and other evidence pertaining to Plaintiff's symptoms.

Plaintiff has a history of scoliosis but the evidence showed that she has been able to work full-time despite this impairment.  (Tr. at 36.)  In 2014, Plaintiff received injections for cervical and right upper extremity pain.  (Tr. at 36, 350-51.)   Plaintiff began receiving chiropractic treatment in March 2015.  In May 2015, while still working full-time, she reported that her back felt great. (Tr. at 36, 406.)  In November 2015, she reported that her back and neck pain were minimal.  (Tr. at 420.)  In December 2015, Plaintiff testified that she stopped working full-time to prepare for her surgery.  (Tr. at 64.)

Plaintiff was hospitalized for pneumonia in December 2015 and in January 2016 to undergo a left lower lobe sleeve resection due to a tumor.  (Tr. at 36, 461-64, 510-12, 541-43.)   The cancer

was removed and Plaintiff has not had any recurrence. Plaintiff testified that her pain symptoms increased following surgery. In early February 2016, Plaintiff went to the emergency room for nausea, vomiting, and diarrhea, but exhibited full range of motion and no tenderness on examination. (Tr. at 37, 640.) In March 2016, Plaintiff reported pain on her side and at the incision. In May 2016, Plaintiff complained of chest wall pain and that she was unable to reach out of her car window with her left arm. On examination, her left shoulder movement was noted to be intact and Plaintiff did not exhibit any neurological deficits. (Tr. at 37, 911.) Plaintiff was referred to physical and occupational therapy and pain management treatment. Plaintiff also saw Dr. Carabetta for her scoliosis back pain in May 2016. On examination, there were prominent muscle spasms towards the left thoracolumbar region but not much tenderness. Plaintiff exhibited normal gait, normal movements, and fair posture. (Tr. at 889-92.) Plaintiff informed Dr. Carabetta that her spinal symptoms were not an issue when she was using pain medication but that she did not want to use pain medication because of constipation. (Tr. at 891.) Plaintiff was instructed to start a Lidoderm patch.

Plaintiff underwent physical therapy for her left upper extremity pain and the records show that some physical therapy goals were met. (Tr. at 1013.) The physical therapy records show that she was able to complete full internal rotation for dressing and exhibited 4-/5 strength for left external rotation. (Tr. at 1061.) In September 2016, Plaintiff reported that physical therapy markedly improved her discomfort but there was a recurrence of pain in August. (Tr. at 1026.) In November 2016, Plaintiff had worsening left shoulder pain after doing laundry at the laundromat. In March 2017, Plaintiff saw Dr. Burton, an orthopedic surgeon, for her scoliosis. Plaintiff complained of back pain. Dr. Burton recommended physical therapy, a daily home core strengthening program, and warm water walking. (Tr. at 1104-05.) In the spring of 2017, Dr.

Gupta treated Plaintiff with nerve block injections and steroid injections. Plaintiff continued physical therapy until she self-discharged in June 2017. (Tr. at 1102.)

Plaintiff's treating physician, Dr. Ransom, completed a Physical Residual Functional Capacity Assessment on January 8, 2018. Dr. Ransom opined that Plaintiff was limited to sitting 30 minutes at a time and up to 2 hours in a work day; that she could stand for 5 minutes at a time and up to 2 hours in a workday; walk 10 blocks; needed frequent breaks and to shift positions at will; and that Plaintiff could only reach for 20% of the time with her left upper extremity. Dr. Ransom further opined that Plaintiff had no limitations for the right upper extremity and no limitations with handling and fingering. Dr. Ransom opined that Plaintiff's pain would interfere with the attention and concentration required to perform even simple work tasks. (Tr. at 40, 1122-26.)

The ALJ gave partial weight to that opinion, stating the following:

> Dr. Ransom's opinion is given partial weight. He is a treating source and his opinion is somewhat consistent with the imaging, physical examination findings such as muscle spasms and a thoracic trigger point, and the claimant's reports of moderate back pain. However, an inability to concentrate to perform even unskilled work, the need for absences and unscheduled breaks, and limitations for sitting only 2 hours total is inconsistent with the claimant's reports regarding her daily activities and pain levels. Dr. Ransom's opinion regarding standing/walking is internally inconsistent as seen above. Lastly, while there may be some left upper extremity limits due to thoracic neuralgia, limitations for reaching only 20% of the time and lifting only 10 pounds is inconsistent with the lack of neurological deficits on examination; good range of motion; and an ability to drive, shop, and perform household chores as discussed above.

(Tr. at 40.)

The ALJ also determined that Plaintiff reported significant activities of daily living, which included laundry, scrubbing her floor, and shopping. (Tr. at 38.) Plaintiff also reported that her grandchildren lived with her in 2017 and that she went on vacation with her sister. (Tr. at 1075, 1084.)

At step four, the ALJ found that Plaintiff was able to perform past relevant work as a secretary and office manager. (Tr. at 41.) In the alternative, at step five, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there were three sedentary jobs in the national economy in significant numbers that she could perform. (Tr. at 43.)

### III. Analysis

Plaintiff contends that the ALJ failed to properly weigh the medical opinion of Dr. Ransom and to evaluate her limitations in reaching when formulating her RFC.

Weighing the Medical Opinion of Dr. Ransom

Plaintiff argues that the ALJ failed to properly weigh the medical opinion of Dr. Ransom, her treating physician, who essentially opined that Plaintiff was "unable to work." (Doc. 11 at 15.) An ALJ should "[g]enerally, ... give more weight to opinions from [claimant's] treating sources." 20 C.F.R. § 404.1527(d)(2). "[T]he opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Daniell v. Astrue*, 384 F. App'x 798, 804 (10th Cir. 2010) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)). "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).

In evaluating a treating physician's opinion, the ALJ is to conduct a two step process. At the first step, the ALJ must determine if the opinion is entitled to "controlling weight." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

In this case, the ALJ stated that Dr. Ransom's opinion was internally inconsistent, was inconsistent with Plaintiff's daily activities and reported pain, and was inconsistent with the lack of neurological deficits on examination. (Tr. at 40.) Plaintiff disagrees with this finding. Even when an ALJ does not give controlling weight to a treating physician's opinion, the ALJ must still weigh that opinion using the factors in 20 C.F.R. § 404.1527. *Watkins*, 350 F.3d at 1300. The following factors must be considered:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

Although the ALJ is not required to explicitly discuss all of the factors, it must be clear to the court reviewing the decision that the ALJ did consider the factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Pope v. Berryhill*, No. 17-2041-CM, 2017 WL 6055712, at *2 (D. Kan. Dec. 7, 2017). The ALJ's decision here states that he considered the opinion evidence in accordance with the regulation. (Tr. at 35.) In addition to weighing the opinion using the factors, the ALJ must "give good reasons in the notice of determination or decision for the weight [the ALJ] ultimately assigns the opinion." *Andersen v. Astrue*, 319 F. App'x. 712, 717 (10th Cir. 2009).

Here, the ALJ clearly decided that Dr. Ransom's opinion was not entitled to controlling weight. The ALJ stated that Dr. Ransom's opinion was inconsistent with Plaintiff's daily activities, it was internally inconsistent, and it was inconsistent with other medical records and the lack of neurological deficits on examination. Plaintiff argues that the ALJ failed to cite to the record for the inconsistencies and did not rely on any other substantial evidence. (Doc. 11 at 15.)

With respect to the ALJ's statement regarding an internal inconsistency, the ALJ referred to Dr. Ransom's opinions regarding Plaintiff's restrictions on standing and walking. Dr. Ransom's opinion is that Plaintiff can only stand for five minutes. However, Dr. Ransom also opined that Plaintiff can walk ten blocks. Although not elaborated by the ALJ, the court notes that a typical city-block dimension is around 100 meters; thus, walking ten blocks within the five-minute standing restriction would require Plaintiff to travel at an eight-minute-mile pace – hardly something one would imagine from a person with the other limitations described by Dr. Ransom.

Moreover, as noted by the Commissioner, the ALJ extensively discussed the medical records and the evidence prior to the discussion of the opinion. In *Best-Willie v. Colvin*, 514 F. A'ppx. 728, 733 (10th Cir. 2013), the Tenth Circuit stated that a lack of "contemporaneous discussion" of the evidence by the ALJ in discounting an opinion does not mean that the court cannot review the decision when the ALJ has "thoroughly discussed the medical evidence in the record." The court must be able to meaningfully review the decision of the ALJ. The court can do so when the ALJ has discussed the medical evidence and testimony. Although a contemporaneous discussion can be helpful to this court during its review, it does not mean that this court is unable to review the ALJ's decision. *Best-Willie*, 514 F. A'ppx. at 733.

A finding by the ALJ that the opinion is inconsistent with the evidence constitutes good cause for assigning the opinion partial weight. *See Newbold v. Colvin,* 718 F.3d 1257, 1266 (10th Cir. 2013). The ALJ's review of the evidence supports this conclusion. The court has discussed that review in this opinion. In brief, the ALJ determined that Plaintiff's symptoms improved with treatment; the examinations showed that Plaintiff has normal range of motion; and Plaintiff cares for her grandchildren, does laundry, cleans, and manages her day-to-day activities. While Plaintiff has identified evidence in the record which may lend support to Dr. Ransom's opinion (Doc. 11 at

14-15), this court is not to reweigh the evidence. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

This court is to review the sufficiency of the evidence and cannot "displace the agency's choice between two fairly conflicting views." *Oldham*, 509 F.3d at 1258. Therefore, the court finds that it was not error to assign partial weight to Dr. Ransom's opinion in light of the court's review of the record.

The court finds that the ALJ did not commit error in his weighing of Dr. Ransom's opinion in this matter.

Discussion of Left Arm Pain

Plaintiff asserts that the ALJ did not evaluate her medical impairments properly when formulating the RFC. Plaintiff contends that the record contains extensive support for postoperative thoracotomy pain, prescription medications, nerve blocks, trigger point injections, and physical therapy. (Doc. 11 at 14.) Plaintiff argues that the ALJ's determination that she can perform frequent reaching with her left arm is not supported by the record.[2]

Here, as identified by the Commissioner, the ALJ discussed Plaintiff's medical records and subjective complaints of pain in addressing her reaching limitations. Contrary to Plaintiff's assertion, the ALJ's decision shows that he considered the objective medical evidence, Plaintiff's statements and statements from other individuals, and other factors under the regulation, 20 C.F.R. 404.1529(c). (Tr. at 35-41.)

---

[2] Although Plaintiff generally states that the ALJ's RFC finding is not supported by the record, Plaintiff's arguments focus on the limitation that Plaintiff can frequently reach with the left upper extremity. Plaintiff makes no further arguments regarding the ALJ's RFC.

The ALJ gave some credit to Plaintiff's testimony but stated that the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the evidence. The ALJ then discussed the evidence and cited to the medical record.

The ALJ discussed that Plaintiff's treatment showed improvement of her symptoms. (Tr. at 19.) This is a valid consideration under the regulation. *See* 20 C.F.R. § 404.1529(c)(3)(v). The ALJ cited to the record in finding that Plaintiff's range of motion was improved with physical therapy. The fact that Plaintiff benefits from treatment supports the ALJ's decision to discount Plaintiff's symptoms.

The ALJ also considered Plaintiff's daily activities in discounting the severity of her symptoms. 20 C.F.R. § 404.1529(c)(3)(i) (the ALJ is to consider activities of daily living when assessing Plaintiff's symptoms). The ALJ found that Plaintiff reported significant activities of daily living, which included laundry, scrubbing her floor, driving a vehicle, and shopping. (Tr. at 38.) Plaintiff also reported that her grandchildren lived with her in 2017 and that she went on vacation with her sister. (Tr. at 1075, 1084.) The findings support the ALJ's decision to discount the severity of Plaintiff's symptoms.

The ALJ also cited to medical records that showed normal examinations and a lack of neurological deficits on examination. (Tr. at 37-38.) This supports the ALJ's decision to discount the severity of Plaintiff's symptoms.

Therefore, the court finds that the ALJ's evaluation of Plaintiff's impairments in developing the RFC, specifically Plaintiff's left arm reaching, was consistent with the regulation and supported by substantial evidence. Although there may be evidence which lends supports to Plaintiff's position, the court is not to reweigh the evidence.

This court must affirm an ALJ's decision if substantial evidence supports that decision.

*See Tarpley*, 601 F. App'x. at 643.  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Id.*  That much exists in this case.

**IV. Conclusion**

The Commissioner's decision is AFFIRMED.

The clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED this 11th day of December, 2019.

_____ s/ John W. Broomes _____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE